IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-02424-MEH-BNB

EASY STREET CORPORATION, a Colorado Corporation d/b/a HOCHFIELD JEWELERS,
and
HOCHFIELD ASPEN,

       Plaintiffs,

v.

PARMIGIANI FLEURIER SA,

       Defendant.

_____

## MEMORANDUM OPINION AND ORDER
_____

Plaintiffs filed this suit bringing claims of breach of contract, conversion, and civil theft.

Plaintiff Hochfield Jewelers, a retailer, claims that it returned eight watches to Defendant, the

manufacturer, under an agreement that Defendant would buy back the watches from Plaintiff.

Defendant claims it refused to pay Plaintiff for the watches, because, although Plaintiff came into

possession of the watches, Plaintiff could not establish the amount it paid for the watches, or that it

ever paid for the watches.  Pursuant to 28 U.S.C. § 636(c), the parties consented to the determination

of this case by a United States Magistrate Judge.  This matter was tried to the Court on April 30,

2007.  The following constitutes this Court's findings of fact and conclusion of law.

## I.      Findings of Fact

      1.      Defendant Parmigiani Fleurier SA ("Parmigiani") is a Swiss corporation with its

principal place of business located in Fleurier, Switzerland.  Parmigiani manufactures watches that

are distributed for sale throughout North America.

      2.      In January 2001, Parmigiani entered into a Sales and Distribution Agreement

("Distribution Agreement") with Horological Works LLC ("Horological Works"), through which

Horological Works agreed to purchase watches from Parmigiani and distribute watches to retailers for resale in the United States. Exh. 1.

3.      Generally, the timepieces were to be sold by Parmigiani to Horological Works. Exh. 1, ¶27. Horological Works was to pay Parmigiani for watches received within 90 days from the invoice accompanying the watches. *Id.* at ¶24. Under the agreement, Parmigiani and Horological could agree that some specific pieces would be put on consignment. *Id.* at ¶27. Under either arrangement, Parmigiani expressly reserved its property rights in the watches until it received payment for the watches by Horological Works. *Id.* at ¶ 25, ¶27.

4.      Parmigiani manufactured and distributed eight watches, which are the subject of this litigation (hereinafter, the "eight watches"). Each of the eight watches contains a case identification number, which is unique to each of the watches manufactured. The eight watches at issue here contain the following Case Identification Numbers: 4388, 5288, 6412, 6656, 7391, 4113, 5023, and 2664.

5.      Pursuant to the Sales and Distribution Agreement, Horological Works received possession of the eight watches. *E.g.*, Exh. 12, p. 2. Horological Works received an Invoice from Parmigiani for each of the eight watches, which were identified by the Case ID. Exh. 10. The following invoices from Parmigiani to Horological Works reference the following Case ID for each of the eight watches:

| Invoice Number | Case ID | Total Amount of Timepiece |
|---|---|---|
| PF-FA-801107 | 4388 | 7,650 CHF (Swiss Francs) |
| PF-FA-801389 | 5288 | 12,150 CHF |
| PF-FA-801873 | 6412 | 7,650 CHF |
|  | 6656 | 8,775 CHF |
|  | 7391 | 8,775 CHF |
| PF-FA-800270 | 4113 | 20,250 CHF |
| PF-FA-801731 | 5023 | 4,320 CHF |
| PF 1272 | 2664 | 21,350 CHF |

6.      With the exception of PF 1272, all of the invoices contain the abbreviation "FA." Don Loke, the owner of Horological Works, testified that the abbreviation "FA" meant "facture" in French and indicated that, accordingly, each of these invoices were for product that was intended to be a purchase/sale transaction, as opposed to product delivered to Horological Works on consignment. The single invoice not containing the abbreviation FA (PF 1272) was dated September 1999, which, according to Loke, pre-dated Parmigiani's use of the abbreviation FA on its invoices.

7.      Don Loke testified that, in reviewing his own internal record keeping, he actually paid Parmigiani for the eight watches, except for the watches referenced as Case ID 6656 and 7391. Michelle Veyna, an independent contractor for Parmigiani, however, testified that Exhibit 41 is a statement of all unpaid invoices and represents the amount that Horological Works owed to Parmigiani as of December 31, 2003. The invoice numbers corresponding to the eight watches

2

appear on Exhibit 41, which indicates that Horological Works had not paid for those invoices as of the date of the account statement. In weighing this evidence, the Court finds that Defendant had not received compensation for the watches as the result of a purchase/sale transaction as of December 2003.

8.      In 2003, Parmigiani instituted an arbitration proceeding against Horological Works, claiming that Horological Works owed Parmigiani 2,564,766 CHF, along with 56,700 CHF for watches delivered on consignment. Exh. 24, Bates No. P00252, ¶164, and Bates No. P00256. On February 19, 2004, Horological Works and Parmigiani entered into a Settlement Agreement resolving that arbitration proceeding. Exh. 26. Under the Settlement Agreement, Parmigiani and Horological Works agreed that the total of the invoices due to Parmigiani was 2,564,000 CHF.

9.      The Settlement Agreement required Horological Works to return a detailed list of Parmigiani timepieces which those parties valued at 2,129,000 CHF. Exh. 26. None of the eight watches appears on the list of watches that Horological Works was required to return to Parmigiani under the Settlement Agreement. The difference between the total invoices owed, 2,564,000 CHF, and the value of inventory being returned, 2,129,000, was accounted for in other ways under the Settlement Agreement. The Settlement Agreement resolved all issues between Parmigiani and Horological Works and ended Parmigiani's claim to ownership in the eight watches.

10.     Plaintiff Easy Street Corporation operates a retail jewelry business in Aspen, Colorado. On April 28, 2000, Plaintiff entered into an "Inventory Security Agreement" with Horological Works (Exh. 2), which provided for Plaintiff to receive Parmigiani watches on a consignment basis from Horological Works. At that time, Plaintiff paid a security deposit of $50,000. Exh. 3. Although the check is payable to Parmigiani Fleurier, it is not contested that the funds were paid to Horological Works, which also did business as Parmigiani Fleurier USA, LLC.

11.     On or about February 3, 2003, Plaintiff gave notice to Horological Works that Plaintiff was terminating the Inventory Security Agreement. Exh. 4. The Notice provided that, pursuant to the Inventory Security Agreement, Plaintiff was to return all Parmigiani inventory and Horological Works was to return Plaintiff's $50,000 security deposit. Despite this, Plaintiff and Horological Works modified the agreement, whereby Plaintiff kept its existing inventory of ten Parmigiani watches, and Horological Works kept the security deposit. It is undisputed that Plaintiff had ten Parmigiani watches when it terminated the Security Agreement (Exh. 5), although only eight are the subject of this action.

12.     Plaintiff's owner Ronald Hochfield testified that, because it owed Horological Works $21,385.30, Plaintiff received the watches from Horological Works by forfeiting the remainder of the $50,000.00 security deposit, or $28,614.70. Mr. Hochfield also testified that, as part of this agreement, Horological Works kept some Daniel Roth watches valued at $15,000.00. The Court, however, does not find that this testimony was supported by sufficient evidence to be deemed credible. Mr. Hochfield further testified that, two days before trial, it learned from Horological Works that it paid $25,350 for Case ID 2664 and $11,760 for Case ID 5288. This testimony was not

supported by the evidence and contradicts the prior testimony that the Plaintiff received the watches on a consignment basis. Accordingly, the Court does not find this testimony credible. In all, the facts at trial establish that Plaintiff paid Horological Works $28,614.70 for ten watches, including the eight at issue in this case. Therefore, Plaintiff held valid title to the ten watches since that time.

13.     On October 6, 2003, Michelle Veyna was hired as an independent contractor for Parmigiani as "President of North America." In late October 2003, Ms. Veyna called Mr. Hochfield, Plaintiff's owner. In that phone call, Mr. Hochfield indicated that his company no longer wished to remain a Parmigiani dealer. Ms. Veyna suggested that Plaintiff attempt to sell its watches at full price through the remainder of the season, or through April 2004, and that she would send him additional watches to supplement his inventory. At the end of the season, if he still did not wish to carry Parmigiani watches, she would allow Plaintiff to return any remaining inventory. Neither party discussed the purchase price of the watches, but Mr. Hochfield testified that he believed it would be the invoice price for the watches. Ms. Veyna testified she believed it would be what Plaintiff paid for the watches, minus refurbishment. She further testified that she assumed she would receive documentation from Plaintiff indicating how much Plaintiff paid for the watches.

15.     Following this discussion, Plaintiff sent Ms. Veyna a list of its current inventory of ten Parmigiani watches. Exh. 5. The list included the retail prices of each of the ten watches. *Id.* The retail value of the ten watches was $188,700.00. *Id.* Ms. Veyna testified that the purpose of the list was so that she would know what watches Plaintiff had so that she could send Plaintiff additional watches to compliment its inventory.

16.     In November 2003, Ms Veyna traveled to Plaintiff's store in Aspen, Colorado, to inspect Plaintiff's inventory of Parmigiani watches. Plaintiff only had two Parmigiani watches on display, which were both discounted at 40% off. Mr. Hochfield testified at trial that he was on vacation and that his insurance would only allow a limited amount of inventory in the store while only one employee was working. Mr. Hochfield further testified that November is part of the off-season and that he returned the watches to regular price before the season began.

17.     Ms. Veyna testified that following this visit, she grew concerned about the way Plaintiff was displaying and selling the watches and determined she would not send additional watches to Plaintiff on consignment.

18.     In early January 2004, Plaintiff called Ms. Veyna, and Ms. Veyna informed Plaintiff that she could not supplement Plaintiff's inventory. At that time, Plaintiff requested that he be able to return the watches immediately, and Ms. Veyna agreed that Defendant would buy back the watches at that time, rather than waiting until the end of the season.

19.     As of January 15, 2004, Plaintiff had only eight of the ten watches it had in October 2003, because Plaintiff sold two watches between October 2003 and January 15, 2004. Mr. Hochfield testified that the watches it sold are identified as C00449 and C00902 on Exhibit 5. The total retail value of the two watches Plaintiff sold was $38,300.00. Exh. 5. Thus, the retail value of

the remaining eight watches was $150,400.00. *Id.*.

20.     On January 15, 2004, Plaintiff sent to Parmigiani, via registered mail, a letter which stated, "I appreciate the offer to buy back my inventory." The letter also included the eight watches and the warranty paperwork, but did not include any invoices. Parmigiani received the letter and the eight watches in late January 2004 or early February 2004. *See* Exh. 7.

21.     On February 4, 2004, Ms. Veyna informed Plaintiff that she had received the watches and that she would follow up on the credit process. *Id.* Ms. Veyna followed up by asking Plaintiff for a copy of the invoices for the watches with payment verification. On February 25, 2004, Mr. Hochfield faxed Ms. Veyna copies of the invoices, noting on the cover sheet the dollar amount of $94,865.00, the wholesale cost of the eight watches. Exh. 11. Ms. Veyna testified that the amount of discount on the invoices indicated to her that the watches were received on consignment, not through a purchase/sale transaction.

22.     Ms. Veyna testified that she considered these invoices insufficient because they did not establish payment verification, and she offered to return the watches to Plaintiff. Mr. Hochfield refused the watches and again requested payment. Ms. Veyna also testified that it did not matter to her whether Plaintiff received the watches through consignment or through purchase. Her intention was to determine the amount Plaintiff paid so that Defendant could pay back the same amount, minus the cost of refurbishment. Ms. Veyna further testified that she assumed Plaintiff had paid close to the dealer price for the watches and that she assumed Plaintiff would include a receipt with the return to establish the purchase price.

23.     In March 2004, Plaintiff made several requests as to when he could expect to receive payment. *E.g.*, Exhs. 8, 9, 20. On May 6, 2004, Plaintiff's legal counsel sent a letter to Defendant regarding the "conversion of Parmigiani Fleurier Wristwatches owned by Hochfield Jewelers." Exh. 21. The text of the letter notes that "Parmigiani has, in effect, converted – simply taken from Hochfield – the Watches." Exh. 21. In this letter, Plaintiff demanded payment but did not request return of the watches. At no time after Plaintiff refused the return of the watches did Plaintiff request the return of the watches, prior to the commencement of this lawsuit.

## II.     Conclusions of Law

Because this case was removed to federal court on the basis of diversity of citizenship, this

Court exercises jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, state substantive law, in this

instance Colorado law, governs these claims. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir.

1998).

5

A.      **Breach of Contract**

To establish a claim for breach of contract, Plaintiff must prove that (1) it entered into a valid contract with Parmigiani for Parmigiani to "refund" or "buy back" its inventory of Parmigiani watches; (2) Plaintiff performed under the contract; (3) Parmigiani failed to perform under the contract; and (4) Plaintiff suffered damages.  *Farmers Alliance Mut. Ins. Co. v. Cutrone*, 448 F. Supp. 2d 1226, 1234 (D. Colo. 2006).  To establish that a valid contract existed between the parties, Plaintiff must prove that there existed "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligations."  *Boeser v. Sharp*, No. 03-cv-0031, 2006 U.S. Dist. LEXIS 19374, *23 (D. Colo. Mar. 31, 2006).

A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.  C.R.S. § 4-2-204(1).  An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.  C.R.S. § 4-2-204(2).  And, even though one or more terms are left open, a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.  C.R.S. § 4-2-204(3).

Here, Plaintiff asked Defendant to repurchase the watches, and Defendant agreed.  Plaintiff then delivered the watches to Defendant.  At no time during this process did Ms. Veyna and Plaintiff discuss the amount of the purchase price that Parmigiani would pay for the eight watches.  Because of this, Defendant contends that there was no meeting of the minds as to the amount of payment, which Defendant argues is an essential term of the contract.  In response, Plaintiff argues that Colorado law does not consider payment to be an essential term of a contract.  *See* C.R.S. § 4-2-

6

204(3).  Colorado law provides that "[t]he parties if they so intend can conclude a contract for sale even though the price is not settled." C.R.S. §4-2-305(1).  "In such a case, the price is a reasonable price at the time of delivery if nothing is said as to price or the price is left to be agreed by the parties and they fail to agree.  C.R.S. § 4-2-305(1)(a), (b).  In that instance, the question of a reasonable price is a question for the trier of fact. *Fischer Imaging Corp. v. General Elec. Co.,* 187 F.3d 1165 (10th Cir. 1999).

In this case, the Court concludes that the parties intended to enter a contract for the sale of the watches, although nothing was said about the price.  Under Colorado law, the contract is, therefore, binding.  The question that remains is whether it is material that Ms. Veyna expected to pay exactly what Plaintiff had paid for the watches, and the Court concludes that it is not material.  Ms. Veyna testified that she assumed Plaintiff paid close to the invoice price for the watches.  Ms. Veyna further testified that Parmigiani would not have agreed to refund Plaintiff for the eight watches if it knew that Plaintiff did not, in fact, pay for the watches.  Plaintiff's representation that it purchased the watches was material to her understanding of the agreement, not the amount that Plaintiff paid.  Plaintiff has established that it did pay for the watches, although not the amount that Ms. Veyna expected.  Material to this contract is that Plaintiff had rightful ownership to the watches, Defendant agreed to purchase them expecting to pay invoice price minus the cost of refurbishment, and Plaintiff delivered the watches to Defendant, along with the invoices.  Notably, both parties expected a similar price.  In fact, Ms. Veyna testified that she assumed Plaintiff paid approximately the wholesale price of the watches, and Mr. Hochfield testified that he expected to receive the invoice price for the watches.

The Court rejects Parmigiani's argument that there was no consideration for the contract, and

that it was simply purchasing the inventory as an act of goodwill. "Consideration is defined as '[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp. to engage in a legal act.'" *International Paper Co. v. Cohen*, 126 P.3d 222, 225 (Colo. App. 2005) (quoting BLACK'S LAW DICTIONARY 324 (8th ed. 2004)).  In other words, "a promise exchanged for a promise imposes mutual obligations and is sufficient consideration to render a contract enforceable." *City of Colorado Springs v. Mountain View Elec. Ass'n, Inc.*, 925 P.2d 1378, 1383 (Colo. App. 1995).  In this case, Plaintiff agreed to sell, and Defendant agreed to purchase the eight watches.  That is sufficient consideration.  Whether Parmigiani's reason for agreeing to purchase the eight watches was for "goodwill" does not alter the fact that the parties had a bargained for exchange of promises to buy and sell.

Defendant received the benefit of the contract by receiving the watches, but Plaintiff received no benefit in that it forfeited the watches and has not received payment.  Because the parties left open the question of price on which they ultimately failed to agree, the reasonable price is to be determined by the trier of fact, in this case, the Court.  The Court finds that a reasonable price for the eight watches at the time of the contract in January 2004 was the invoice price of the eight watches, $94,865.00.  Although Ms. Veyna testified at trial that the price of refurbishment would customarily be deducted from the invoice price, no evidence was submitted to establish the estimated cost of refurbishment for these watches.  In fact, it appears likely that these watches have not been inspected since they were delivered to Defendant.  Under these circumstances, the Court cannot deduct any amount for refurbishment from the invoice price.  Accordingly, the Court finds that Defendant breached its contract with Plaintiff, and that Plaintiff suffered damages in the amount of $94,865.00.

8

Further, the Court is unpersuaded that Plaintiff failed to mitigate its damages. Defendant contends that Plaintiff should have accepted the return of the watches and attempted to sell the watches on consignment. In response, Plaintiff contends that the offer of return came at the end of the season and that Plaintiff was no longer able to sell the watches. Defendant's argument that the watches could have been sold on consignment underscores its belief that it owned the watches, which contradicts the evidence presented in this case. Because the offer came at the end of the season, after Plaintiff already attempted to sell the watches, and in fact sold two watches, the Court finds that Plaintiff did not fail to mitigate its damages.

**B.      Conversion**

"Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Allstate Ins. Co. v. Murray Motor Imports Co.*, 357 F.3d 1135, 1139 (10th Cir. 2004). One who takes a chattel from its owner without right but under a mistaken belief is guilty of conversion. *Mari v. Wagner Equipment Co., Inc.*, 721 P.2d 1208, 1211 (Colo. App. 1986). Even so, "predicates to a successful claim for conversion are the owner's demand for the return of the property and the controlling party's refusal to return it." *University of Colorado Found., Inc. v. American Cyanamid Co.*, 880 F. Supp. 1387, 1392 (D. Colo. 1995).

As detailed in the Court's Findings of Fact, Plaintiff was the owner of the eight watches. Parmigiani is not allowed to defend the action by claiming that Horological Works is the true owner (on the theory that Plaintiff never paid Horological Works for the eight watches). *See Air-Exec, Inc. v. Two Jacks, Inc.*, 584 F.2d 942, 945 (10th Cir. 1978). Nevertheless, Plaintiff voluntarily mailed the watches to Parmigiani, and this possession did not become wrongful until Parmigiani refused to pay for the watches. At that time, Plaintiff, rather than demanding the return of the watches, refused the

return of the watches.  Since that refusal, Plaintiff has demanded payment on several occasions.  Yet,

at no time prior to the institution of this lawsuit did Plaintiff demand the return of the watches.

Accordingly, Plaintiff's claim for conversion fails.

**C.    Civil Theft**

To prove civil theft, a party must prove conduct that meets the statutory definition of criminal

theft under C.R.S. § 18-4-401.  *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000).  Under Colorado law,

a party commits theft when:

> [H]e knowingly obtains or exercises control over anything of value of another without
> authorization, or by threat or deception, and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing
> of value; or (b) Knowingly uses, conceals or abandons the thing of value in such
> manner as to deprive the other person permanently of its use or benefit; or (c) Uses,
> conceals, or abandons the thing of value intending that such use, concealment or
> abandonment will deprive the other person permanently of its use and benefit; or (d)
> Demands any consideration to which he is not legally entitled as a condition of
> restoring the thing of value to the other person.

C.R.S. § 18-4-401.

Here, Parmigiani did not obtain control of the watches without authorization but, rather, was

expressly authorized by Plaintiff to obtain control of the watches.  Nor did Parmigiani intend to

permanently deprive Plaintiff of the use of the property at the time it obtained control of the property,

because Parmigiani intended at that time to pay Plaintiff for the watches.  When Plaintiff failed to

establish the amount it paid for the watches, Parmigiani tried to return the watches to Plaintiff, but

Plaintiff refused.  As noted above, Plaintiff did not request the return of the watches after it refused

the return of the watches.  Under these circumstances, Parmigiani's possession of the watches after

its refusal to pay was authorized, and Parmigiani is not liable for civil theft.

**III.     Conclusion**

Accordingly, for the reasons stated above, it is hereby ORDERED that Judgment be entered in favor of Plaintiff and against Defendant for Breach of Contract in the amount of $94,865.00, plus statutory interest at the rate of 8% per annum from May 6, 2004, and continuing until the date of this Order, plus costs.  Plaintiffs are awarded their costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.Colo.L.Civ.R. 54.1.  Plaintiffs' Bills of Costs shall be filed with the Clerk of the Court within ten days after the date of this Order.

It is FURTHER ORDERED that Judgment be entered in favor of Defendant and against Plaintiff on Plaintiff's claims of Conversion and Civil Theft.

Dated at Denver, Colorado this 9th day of August, 2007.

BY THE COURT:


 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge